NATIONAL PROTECTIVE ASSOCIATION *vs.* PRENTICE BROWN STONE CO.

Argued Dec. 8, 1891.   Decided April 1, 1892.

Contract Construed.—The contract set forth in the record *held* not void for indefiniteness, and to include an undertaking on the part of the defendant to pay a monthly assessment according to the number of men employed by it in its quarries, in consideration of plaintiff's providing hospital treatment for such employes when sick or disabled, and procuring insurance against defendant's liability for damages from accidents or injuries suffered by them in the course of their employment.

Corporation—A Party to the Contract.—*Held, also*, that such a contract, running in the name of the defendant corporation, and signed officially by its president, was the contract of the corporation.

Appeal by defendant, the Prentice Brown Stone Company, from an order of the District Court of Hennepin County, *Hooker*, J., made June 20, 1891, refusing it a new trial.

The plaintiff and defendant are both Wisconsin corporations. The plaintiff, The National Protective Association, is organized to furnish laborers with medical attendance and nursing in case of sickness, and funeral expenses in case of death. In consideration of its agreement to do this, it collects of the employer of laborers who make contracts with it at any of its posts, one dollar per month for each employe, to be paid on the first day of each month. It seeks to obtain contracts and enlist employers in its interest by paying and procuring for them insurance against liability to their laborers for injuries the laborers may receive while in their service, and requires the employers to pay this amount for each laborer each month that he remains in the employment.

The defendant, The Prentice Brown Stone Company, is engaged in quarrying and selling brown sand stone at its quarry near Washburn, on the bay of Chequamegon, opposite Ashland, Wis., and had there in its employ in May, June, July, and August, 1890, about one hundred and fifty laborers. On the 18th day of April, 1890, these two corporations entered into a contract of which the following is a copy:

### CONTRACT.

This agreement, entered into this 18th day of April, 1890, between the National Protective Association, party of the first part, and the Prentice Brown Stone Company, Ashland, Wisconsin, party of the second part, to witness as follows: .

In consideration of the first party paying the premium of a liability policy in the Fidelity and Casualty Co. of New York, which insures the party of the second part in cases of liability to employes, according to the condition of said policy; and the party of the first part, organizing a post, the purpose of which is to care for the employes of the second part, in cases of sickness or accident, according to the rules, regulations and by-laws of said Association; said party of the second part does agree to charge each and every employe the insurance fee of $1.00 the first of each and every month, and pay the amount of said charges to the party of the first part, the 15th of such month, during the continuance of this contract. Subject to the conditions mentioned on reverse side of this contract, and made a part hereof.

It is further provided, if the premium paid on said policy should not be sufficient to keep said liability policy in force during the continuance of this contract, then, in that case, the National Protective Association shall pay the premium on a new policy extending the liability insurance to cover the term of this contract. On the contrary, if the premium paid on the liability policy should extend said policy for a longer term than is contemplated in this contract, said party of the second part shall refund the National Protective Association the unearned premium at the expiration of this contract, unless otherwise settled by the mutual consent of both parties. .

The party of the first part shall be entitled, at the expiration of

this contract, to a statement from the party of the second part, signed by said party, showing the amount of wages paid each month during the continuance of this contract, and showing the amount of the unearned premium, if any.

This contract to take effect this 18th day of April, 1890, and remain in force until the 18th day of April, 1891.

THE NATIONAL PROTECTIVE ASS'N.

By F. B. DOWNS, Gen. Mgr.

F. PRENTICE, Prest.

(On the reverse side is the following:)

It is further understood that the party of the second part shall have authority to release certain employes from the payment of the insurance dues, provided that such employes so released do not exceed one fourth of the total number employed. And such employes so released are not entitled to the benefits of the National Protective Association; but the liability policy which is furnished the employer, under the conditions of this contract, shall cover liabilities to all employes of the party of the second part, according to the terms of the liability policy.

And it is further understood, that on or before the second day of each month, the party of the first part shall be furnished a list of the names of all the employes of the party of the second part, and that the said list shall designate the persons entitled to benefits from the party of the first part, and those not entitled to such benefits; also, the party of the second part shall promptly notify the party of the first part of the engagement of any employe, and shall state whether or not such employe is entitled to benefits from the party of the first part.

It is also agreed that any employe of the party of the second part will not be entitled to the benefits contemplated in this contract unless said first party has been previously notified of the deduction being made from said employe, in the way and manner specified in this contract.

It is hereby understood that for fractional parts of month, the deductions shall be at the rate of twenty-five cents for each quarter

of month.   This is understood to include only such men as are hired and work only fractional parts of months.

At the time that this contract was signed an application for a policy in the Fidelity & Casualty Company of New York was made, and a policy was soon after obtained and delivered to the defendant.   By this policy the Fidelity & Casualty Company agreed that for the period of one year from April 18, 1890, it would pay the Prentice Brown Stone Company (called the insured) all such sums as the insured might become liable for in damages for fatal or nonfatal injuries to its employes while engaged in the occupations and at the places named in the application for the policy, not exceeding, however, $1,500 for an accident to any one person, and not exceeding $10,000 for any one accident to several.   The plaintiff paid for this policy the sum of $300.

The defendant, it seems, expected that its laborers would agree to have this dollar a month reserved out of their wages, but they refused, and thereupon it declined to make the monthly payments. The plaintiff claimed the monthly payments regardless of the refusal of the men, and brought this action to recover the amounts due it on the 15th day of each of the months of May, June, July, and August, 1890.   The action was tried February 9, 1891.   The jury by direction of the court returned a verdict for the plaintiff and assessed its damages at $634.   The defendant moved for a new trial and being denied it appealed to this court.

*Kitchel, Cohen & Shaw,* for appellant.

The contract is signed with a stamped signature "The National Protective Ass'n," below which are the written words "By F. B. Downs, Gen. Mgr.," and below these words are the words "F. Prentice, Prest."   On its face the signature "F. Prentice, Prest." may mean one of three things.   It may mean that F. Prentice is the president of the National Protective Association, and that the contract was signed by him on behalf of that association, as its president; or it may mean that instead of being signed by the Prentice Brown Stone

Company it was signed individually by F. Prentice, and that the abbreviation "Prest." is mere surplusage; or it may mean that it is executed for the Prentice Brown Stone Company by its president in his official capacity. In this uncertainty, the contract becomes in law *prima facie* the individual contract of F. Prentice, but extrinsic evidence is admissible to show that it was in fact executed by Mr. Prentice in his official capacity as president of defendant, and on behalf of defendant. *Brunswick-Balke-Collender Co.* v. *Boutell*, 45 Minn. 21; *Souhegan Nat. Bank* v. *Boardman*, 46 Minn. 293.

There are no corporate marks upon this contract by which it can be determined as a matter of law on its face that it is defendant's contract. The extrinsic evidence offered was insufficient to show that the contract was defendant's contract, or to show that the defendant could legitimately enter into so unusual a contract as this is, or that the making of such a contract was within the powers of the president, or that it was in any manner authorized by the directors or stockholders of the corporation. *Brunswick-Balke-Collender Co.* v. *Boutell*, 45 Minn. 21; *Falk* v. *Moebs*, 127 U. S. 597.

A post is a body of men who are employed by the same employer, and who have directed their employer out of their wages to make plaintiff the monthly payments required by the by-laws, and whose employer has agreed upon the employes' orders to deduct the stipulated amount monthly from their wages, and pay such amount to the plaintiff. To give the word "organize" in the contract in question any less meaning than that of creating or bringing into being the thing to be organized, would do violence to the language used. The natural import of the language of this contract is that plaintiff would bring into the membership of its association some or all of defendant's employes. The appointment of a secretary was not the organization of a post.

The contract was an entire contract, and if plaintiff failed to organize the post it cannot recover, although it has partly performed its contract. The partial performance of an entire contract can give no right of recovery. *Stees* v. *Leonard*, 20 Minn. 494, (Gil. 448;) *Nelichka* v. *Esterly*, 29 Minn. 146.

Unless the construction of this contract contended for by us is the true construction of it, it is too indefinite and uncertain to be enforced. The court was not justified in directing a verdict for plaintiff. There were controverted questions of fact which should have been submitted to the jury upon the evidence: *First,* whether Barr was ever appointed secretary of the post; *second,* whether the doctors were ready to perform their services; *third,* whether the contract was made by direction of defendant.

The case should have been submitted to the jury for it to determine what the contemporaneous and practical construction of the contract in question was, with regard to the duty of obtaining members to the plaintiff's association. The practical construction put upon the contract at the time by all the parties cannot be ignored or disregarded by the courts. *First Nat. Bank* v. *Jagger,* 41 Minn. 308; *O'Dea* v. *City of Winona,* 41 Minn. 424; *District of Columbia* v. *Gallaher,* 124 U. S. 505.

*C. G. Laybourn* and *F. B. Lathrop,* for respondent.

This contract provides that in consideration of the plaintiff's paying the premium of a liability policy in the Fidelity & Casualty Co. of New York, and organizing a post, the purpose of which was to care for the employes of defendant in cases of sickness or accident, the defendant would charge each and every employe one dollar on the first of each and every month, and pay such amount to the plaintiff on the fifteenth of such month. All other provisions in the contract, so far as they are pertinent at all, consist in relieving the defendant and plaintiff mutually from the burdens imposed by it as to such of defendant's employes as defendant should exempt, not exceeding one-fourth the number.

A post is fully organized when hospitals, physicians, and dispensaries are provided and employed by plaintiff, where the beneficiaries may procure medical care and services in cases of sickness or accident. It is true that a post may have members; no one disputes it. It is not true that in order to be members, employes must have directed their employer, out of their wages, to make plaintiff monthly payments. Here lies the whole controversy.

This contract is on its face an agreement between the National Protective Association, party of the first part, and the Prentice Brown Stone Co., party of the second part. In cases of this kind, the question as to who shall be charged, is purely a question of intent, and where the intent appears on the face of the instrument, that intent must prevail. If what the courts call corporate marks greatly predominate on the face of the paper, they hold it to be the contract of the corporation. *Souhegan Nat. Bank* v. *Boardman*, 46 Minn. 293; *Whitney* v. *Wyman*, 101 U. S. 392; *Post* v. *Pearson*, 108 U. S. 418; *Hitchcock* v. *Buchanan*, 105 U. S. 416; *Carpenter* v. *Farnsworth*, 106 Mass. 561; *Goodenough* v. *Thayer*, 132 Mass. 152; *Falk* v. *Mobes*, 127 U. S. 597.

Where the intent does not appear on the face of the instrument it may be shown by extrinsic evidence. In this case, though unnecessary, it has been clearly shown. It is well settled that slight evidence upon the face of an instrument will make it *prima facie* the act of a corporation. The rules governing commercial paper such as notes and drafts are quite different from those applicable to ordinary contracts. As to the authority of Mr. Prentice, the president, to execute the contract, it is sufficient to say the defendant accepted the benefits of the contract by receiving and retaining the indemnity insurance, and is estopped from denying that it is its contract, and from denying that the president had authority to make it. *Auerbach* v. *Le Sueur Mill Co.*, 28 Minn. 291; *Henderson* v. *San Antonio & M. G. R. Co.*, 17 Tex. 560; *Albitz* v. *Minneapolis & Pac. Ry. Co.*, 40 Minn. 476; *Merchants' Bank* v. *Central Bank*, 1 Ga. 418; *Burrill* v. *President, etc., of Nahant Bank*, 2 Met. 163.

Defendant claims it should have had the opinion of the jury: *First*, whether Barr was appointed secretary of the post. This was immaterial. *Second*, whether the doctors were ready to perform their services. There was not the slightest evidence to contradict the plaintiff's evidence that they were, and it naturally follows that the jury could not have found otherwise than as directed. *Third*, whether defendant was estopped to deny it made the contract.

The practical construction put on the contract by the parties was doubtless for the court to decide when the evidence was all one

way, and that in favor of the verdict as rendered.    *Hallam* v. *Doyle*, 35 Minn. 837; *Dawson* v. *Helmes*, 30 Minn. 107; *Phoenix Ins. Co.* v. *Doster*, 106 U. S. 30.

When the evidence on the part of both parties was in, if the court would not permit a verdict for defendant to stand, it should direct a verdict for plaintiff.    *Giermann* v. *St. Paul, M. & M. Ry. Co.*, 42 Minn. 5; *Abbett* v. *Chicago, M. & St. P. Ry. Co.*, 30 Minn. 482; *Thompson* v. *Pioneer-Press Co.*, 37 Minn. 285; *Duluth Chamber of Commerce* v. *Knowlton*, 42 Minn. 229; *Woodling* v. *Knickerbocker*, 31 Minn. 268; *Reed* v. *Lammel*, 40 Minn. 397.

No provision whatever was made by the contract for instances where the men would not consent to the assessment and deduction from their wages.    If the defendant found it impracticable to get their consent, and was obliged to pay the amount itself, or what was the equivalent, raise their wages one dollar per month, still it was possible for it to fulfill its contract, and it must do it.

VANDERBURGH, J.    The contract between the parties was not void on account of the indefinite character of its provisions, or because of the difficulty or embarrassment which might arise from carrying it into execution.    The plaintiff, under this contract, at its own cost, procured a policy of insurance in the Fidelity & Casualty Company of New York, under which the latter company insured the defendant against loss or damages arising from accidents to the employes of the defendant, to the extent therein named, for one year.    This contract was in force from April 18, 1890, to April 18, 1891.    Annexed to the contract were certain other provisions obligatory upon the parties.

The plaintiff alleges that defendant wholly failed and neglected to carry out the contract on its part, has furnished plaintiff no list of employes, and made no effort to collect the monthly dues provided for in the contract, and plaintiff therefore claims damages in this action for the breach of the contract by defendant.

It is evident that the contract provided a sufficient consideration for the defendant's obligation, and it had the benefit of the insurance policy of the Fidelity & Casualty Company; and the answer

admits that no attempt has been made by it to collect dues or assessments from its employes, and no payment has been made to plaintiff; and it appears that on September 2, 1890, the defendant's president notified the plaintiff that he considered the contract canceled. Very likely there was a misunderstanding as to the proper construction of the rights and duties of the parties under the contract.

The defendant, however, contends that its duty to charge or make deductions from employes' wages, and pay over the monthly dues, was conditioned upon their having previously become members of one of plaintiff's "posts," and that a "post" must first have been constituted by plaintiff in this way, with the voluntary organization of the defendant's employes. The contract, however, by itself, will not bear this construction; and we do not think the by-laws, read in connection with it, contain provisions which compel such construction to be given to it. It is doubtless true that it would have been more reasonable and prudent that the contract should have been as contended for by the defendant.

The chief purpose of plaintiff's organization was to provide care and hospital treatment for sick and injured employes. The condition of membership seems to have been the payment of the monthly dues of employes. The plaintiff had provided the hospital and medical treatment for defendant's men, and had appointed a secretary of the "post," whose duty it was to issue orders for treatment, and to see that "deductions" from the wages, reports of same, and payments were made in accordance with the by-laws; and it was the usual custom of the plaintiff to appoint some one in the office of the employer as secretary or assistant secretary.

The by-laws evidently contemplate the co-operation of employer and employes, but there is nothing in them to prevent an employer from undertaking with the plaintiff to assume the responsibility of membership for all or three fourths of his employes, so as to avail himself of hospital benefits for them, and take upon himself the risk of securing the assent of the employes to the arrangement. And this, we think, is the construction which must be given to the terms of this contract, as respects both present and future employes during the life of the contract.

And, in this view of the case, all that was necessary for the establishment or organization of a "post" was done by the plaintiff. In other words, the evidence shows a "post" organization sufficient to satisfy the terms of the contract.

The defendant evidently understood the contract as we have construed it, as will appear by the subsequent correspondence; for instance, in the letter written in behalf of the defendant company by its president under date of September 2, 1890, it is stated that "our president notified your agent some months ago that our company should consider our contract canceled, owing to the fact of your advertised Washburn physicians refusing to attend our men without our company being responsible or guarantying their pay, and our men refused to allow us to assess them on that account."

Another point raised in the court below and insisted upon here is that the contract is not that of the defendant corporation. But we think it was correctly overruled.

The defendant is named as one of the contracting parties in the contract, which is signed by "F. Prentice, President." He is shown to have been president at the time. It purports to be the contract of the corporation, executed by its principal officer. It does not belong to a class of contracts which require special formality in their execution, and it is good without a seal. The question of the authority to execute the contract in behalf of the company is not presented by the record. But we think it is *prima facie* valid, and binding upon the company. Besides, the contract was acted on, and subsequently recognized, by the corporation.

We have very carefully examined the record and the learned and exhaustive brief of the defendant's counsel, but find no ground for reversing the order of the trial court.

Order affirmed.

(Opinion published 51 N. W. Rep. 916.)